Thank you, your honor. May it please the court, my name is Lauren Stein. Oops, here it is again. Maybe we just have to live with it. Okay. May it please the court, Lauren Stein appearing as counsel on behalf of the plaintiff's appellants Eric and Audra Gilbert. Your honors, this case arises out of a contract between the Gilberts and NMACA Management Limited for the purchase of a piece of residential property here in Arizona. After the party's contract was executed, the Gilberts discovered that NMACA claimed to be a foreign entity exempt from the federal tax system, with a history of filing lawsuits against the government challenging its tax authority. The Gilberts found themselves in an untenable position. First, having learned that NMACA claimed to be a foreign entity, the Gilberts were required under federal law, the FDAP and the FIRPTA, which I'll call FDAP and FIRPTA, to withhold a statutorily mandated percentage from any payments they made to NMACA under the contract. However, NMACA disagreed and demanded full payment, no withholding, or it would deem the Gilberts in breach of their contract and forfeit any right or interest in the property. Second, the Gilberts learned that NMACA had caused multiple federal tax liens to be placed on the property, which precluded NMACA from providing the Gilberts clear title to the property. If I can interrupt, tell me how they ended up getting the federal government to file tax liens. I don't understand them. Are these phony liens that aren't real liens? I can't just call up the IRS and say, would you please put a tax lien on my neighbor's property. But what happened? And what's the proof in the records as to what happened? So, your honor, my understanding, at least based on the record that's before the court, is that NMACA and or Leopard, its trustee, failed to pay taxes that were assessed by the government. And the government then, following its process and protocol, levied a lien on the property. Oh, well, that's different from the same cause to put it. No, I mean, they didn't pay their taxes. OK, I get it. Yes. And my apologies, your honor. Thank you for thank you for catching my ear on that. At that point, your honors, the Gilberts found themselves in really an untenable position. On the one hand, they could comply with their statutory withholding obligations under FDAP and FERPTA, and they could withhold amounts from payments that were due to NMACA under the agreement. But then they'd be placed in breach of that agreement by Leopard and potentially forfeit any interest in the property. But then on the other hand, they could simply ignore their FDAP and FERPTA obligations, expose themselves to liability to the federal government, but then attempt to continue to pursue it and their rights under the contract. And having found themselves in that really untenable position, the Gilberts turned really the one and only forum that they saw as a viable one, which is the Arizona District Court. Now, the Arizona District Court misinterpreted the Gilberts' claims from the outset. The court assumed that it would be required to determine and assess the amount and the validity of the taxes ultimately assessed against NMACA. And the court further assumed that the Gilberts had an alternative forum in which they could seek redress for their claims. But none of those assumptions or neither of those assumptions was accurate. And those faulty assumptions ultimately led the district court to dismiss with prejudice each of the Gilberts' five claims for relief on primarily sui sponte and jurisdictional grounds without leave to amend. This court should reverse, it should remand and allow the Gilberts' claims to proceed. But at the very least, the Gilberts should be allowed to amend their claims to rectify any perceived defect. And I understand that there are a number of claims and issues in this case. So unless there's someplace specific that the court would like me to begin, I'd like to begin with what we believe are the faulty assumptions underlying the district court's decision. Before you get to that, and this may or may not be useful, but I'm trying to figure out what the Gilberts really want. We're told that at some point the liens are removed. The Gilberts are told that, listen, if you want to continue making payments, we will forgive the fact that you missed the payments while this dispute was going on and you can pick up the liens. Is that true? No, Your Honor, and I don't think we can consider those particular issues for a couple of reasons. So first, what you're referring to, I believe, are the documents that were submitted in the supplemental excerpts by NMACA and the government in connection with their briefing. And what you have there are a letter exchanged between a title company and a couple of, or a few, unrecorded Maricopa County lien releases. None of those records were properly before the trial court, and so I don't believe that this court can consider them under FRAP 10 or Next Circuit Rule 10.2. And even if the court did, though, I don't believe that this court can consider either those particular releases or the letter that Your Honor has mentioned in a vacuum devoid of any factual context. And I can certainly, and would like to expand on that, but Your Honor, to turn back to address your first question, what is it the Gilberts want? Your Honor, they want to be able to comply with their federal obligations to withhold the statutorily prescribed amounts without being held responsible either personally from the federal government or be deemed to be in breach of their agreement and deemed to be waived, deemed to forfeit their interest under the contract. And with respect to the liens, when this case was originally filed, there were multiple federal tax liens on the property which precluded the Gilberts from the benefit of what they bargained, the ability to get that property free and clear. And while the issue of the liens, again, not something that's properly before the court today, and certainly requires more factual development if the court's inclined to consider it, may have altered the status with respect to whether there are permanent liens on the property. At the end of the day, when the Gilberts filed their complaint, those were on there, and they can continue to proceed on their claims for damages, attorney's fees and costs and expenses that they've incurred in connection with having to file that now proceed up on appeal. And Your Honor, does that answer your question? Not really. But you're telling me you really can't answer it because it's not in the record in front of the district court. And fair enough. But I do occasionally, I would like to go outside the record as best I can with permission of the lawyers to try and figure out what's really going on and what people want. And I can't quite figure it out. So at this point, Your Honor, the Gilberts still have the issue with respect to their federal withholding obligations. NMACA, on the one hand, has claimed that the Gilberts can't withhold. But my question, what they want, are they still interested in the property? Or are they interested in a lawsuit for the recovery of the costs associated with this litigation and all the uncertainty? Do they They've given possession of the property up, possession, the current possession of property. But I believe that they still want the opportunity to pursue both, Your Honor. They do want the property. I believe they want the opportunity to pursue both, Your Honor. Or at least at the very least. Okay. I may be putting you in an unfair position here because you don't really want to answer the question and there's no reason why you should have to. Okay. Sorry, go ahead. But I do want to address the issue of the releases because I think it's an important one for the court to appreciate how it factors into this, right? So the government and NMACA have taken the position that liens on the property were released after this case was dismissed at the trial court and after this appeal was filed. I don't think that that's something that this court can consider based on the limited appellate record in front of it, nor is it that the court can consider divorce of any additional factual content. And so let me just give the court an example. It's very possible that there may still be federal tax liens on the property recorded or otherwise. And we don't know that, Your Honor, absent some further factual development, which is appropriately had at the trial court level. We know, Your Honor, from the Gosorp case that we cited in the papers that liens attached to the personal and real property of a based on the allegations in the First Amendment complaint, as well as the allegations that the government has expressly admitted in its answer to the First Amendment complaint, it's very likely, if not possible, that NMACA and or Leopard have failed to pay taxes for additional time periods and that the government has made demand. And therefore, whether recorded or not, there are additional liens on the property. So I did want to address that, Your Honor, before speaking specifically, unless the court had any other questions about the two faulty assumptions we believe underlie the court's decision. Please go ahead. Your Honor, I think there were two faulty assumptions underlying the court's decision. First, the court incorrectly assumed that it would have to adjudicate tax issues in order to provide relief in this claim. And second, the court assumed that the Gilberts had an alternative forum that they could seek relief in. With respect to the first, the Gilberts' claims didn't seek an adjudication of tax liabilities. The Gilberts didn't seek to ask the court to determine what taxes NMACA may or may not owe. They simply sought relief from the court with respect to their statutory withholding obligations. And that's an obligation that is triggered when you have a transfer of a U.S. property interest or a payment from a U.S. person to a non-U.S. person. We believe those circumstances are present in this particular case. And having those present, the Gilberts were required automatically to withhold a statutory amount. No more and no less. So counsel, I mean, I'm struggling with this argument a little bit, and I'm not sure that the legal, I'm not sure I've seen legal authority that supports the argument. I mean, I understand that withholding is a little bit different than a tax, but the problem is if it's not done, then it becomes a tax, essentially, right? Your clients would become liable for the taxes unpaid. If the withholding isn't done. They would be liable to honor not for the tax. The tax isn't assessed until some later point after withholding. They could be responsible for the failure to withhold in and of itself, but withholding occurs before there's any determination of whether there is a tax owed and before the tax assessment period. So it's sort of the initial procedural step and the actual tax assessment and liability follows. Okay, so I mean, I understand the you're trying to lay out, but when you ask the court to do an interpleader and to take custody of the money and resolve this problem, I mean, the court has to figure out tax liability to figure out who gets what money. Not necessarily, your honor. And I think this highlights the tension between the court's conclusion that there was an alternate forum for the Gilberts to go to and the government's proposed process for resolution in this case, and sort of the end of the day is facing potential exposure, both from the NACA under the contract and from the federal government with respect to withholding. What the courts, what they want in the interpleader action is to be able to take those funds, put them with the court, and then have a space where they can say, now we're free from responsibility, either with respect to our withholding obligations or with respect to the government. And really the interpleader is the only way in which we can achieve that because there's no administrative process that the Gilberts could follow, because there really isn't a process for the adjudication of a dispute between a taxpayer and a non-taxpayer. The administrative regulations deal with the resolution of disputes between taxpayers and the government. And the government's proposed solution was simply for the Gilberts to deposit the monies with the government and then hope that NMACA may come later on and seek a refund. But that's not a workable solution because in order for the Gilberts to deposit the monies and then for anybody to be eligible for a refund later on, they need a TIN number, a taxpayer identification number. And as we've alleged in the complaint, the Gilberts asked for the tax identification number and NMACA refused to give it. And so absent a tax identification number, the Gilberts would be faced with depositing all of these sums with the government with no way for the government to track it or ever trigger any refund. And again, that's not a refund that goes to the Gilberts. That's a refund that NMACA would have to give to the government to obtain. And so really the interpleader provides the only workable solution under the circumstances given the absence of any viable alternative forum. It would allow, for example, the Gilberts to interplead these funds at issue with the court and then the court could decide, should we stay this action pending resolution of a separate administrative proceeding between NMACA and the government over whether or not there is or isn't a tax that should be assessed and what that liability is. The court might also be able to construct another avenue where it enabled those funds to be specifically transferred over to the government to be held and dealt with addressing this absence of a TIN issue. So your honor, I appreciate your point. It's certainly a fair one that, you know, simply by saying that there's withholding, you've got these funds being put into the court, but really this is the only viable solution that gives the Gilberts any place in which to take this dispute. And I think there's certainly a manner in a way in which the trial court could have addressed this issue absent actually delving into and determining what the tax liability is. Why couldn't the Gilberts have just withheld the money that they think is going to end up needing to go to the federal government themselves and then wait for the tax bill to come or wait for the notice saying this is the withholding amount and then deal with it that way? If the Gilberts withheld, they'd be deemed in breach of the contract from NMACA. NMACA has already said that to them. It's alleged in the complaint. They would have potentially forfeited their interest in the property. You can see that's already... I understand that that causes problems in terms of the private transaction, but wouldn't that solve the problem with the government? Well, I think your honor, at the end of the day, we'd end up back at the same place because we'd be back in front of this court fighting over the withholding obligation in the first place. And if as the court... But at that point, you would have a tax bill or some sort of demand from the federal government and the procedural posture would be different. Well, I think the procedural posture would potentially be different, your honor, but I don't think that it would provide another alternative. I think at the end of the day, we'd be back to the very same position we are in now, which is what the Gilberts want to know. Do I have to withhold? Don't I have to withhold? We think we do. They're saying, I don't. I want to be in a position where our clients don't have to face this simultaneous exposure, losing their right and interest in this property versus potentially running afoul of the withholding obligations to the government. Your honors, I see that I'm already over my limit of time. If there are any additional questions, I'm certainly happy to answer them of the court. Otherwise, if the court would indulge me a couple of moments in rebuttal. Let's hear from the other side and then we'll give you a chance to respond. Thank you, your honor. Now I see that the other side is splitting. I don't know who's going first and I don't have a time allocation that you liked. How do you want to go forward? This is Robert Rotz on behalf of FLE, Kelly Leppard, trustee of NMACA. We split our time up 10 minutes for my client and five minutes for the government with me to begin. Okay, fire away. Thank you, your honor. May it please the court. I already told you who I am. I think there's a lot of issues that have been raised in the brief, but they all end up hitting similar brick walls. And the first one that I'd like to discuss is the mootness of this claim, which the panel brought up almost immediately when they said, you know, what do the Gilbert's want? Well, the liens have been released. And as you noticed in the supplemental record, we did offer to allow them to close this transaction without any type of penalty. So that was available and it makes it hard to understand what the Gilbert's actually do want, because I think that, I mean, you honed in on that immediately, Judge Fletcher, that, you know, it seems like more like they're just pursuing fees and costs at this point, rather than actually expressing their interest in continuing to buy this home because, you know, they were afforded the opportunity to do so without any penalty, without any issue of FERPDA or FDAP withholding and with the tax liens having been confirmed to have been removed. Title company told them that they would issue a marketable title report at the time of closing. So that's a very good question, I think, that the court raised. But we haven't had any fact finding on this question. I mean, there may or may not have been removed. They may not have been removed in a way that's fully cognizable. Do we need to send it back to the district court to consider the question of mootness? We're not in a very good position ourselves to resolve factual questions if it's disputed. Well, obviously, your honor, I'd prefer to have the case, the appeal denied at this point without a remand. Yeah, so you understand our position. But I think the mootness is something that the court should consider. You know, the fact that the liens have been removed, particularly when you get into the jurisdictional arguments, because the liens were the best argument that the Gilbert's had towards jurisdictional arguments. So when the liens were removed, that hook was removed also. But even when you look at the liens and the liens being used as the vehicle through which the Gilbert's would achieve jurisdiction under 2410, you can notice that they specifically say in their first amended complaint, we are not challenging the validity of these liens. We're not challenging the procedural posture of these liens. We're really here to determine what our obligations are under FDAP and FERPTA. And without having, you know, previously as a prerequisite paid those taxes, that issue was premature. And they were asking for an advisory opinion from the court in reality. And that's why they postured this as an interpleader and a declaratory relief is that their posture was, we don't know whether or not we need to be doing this withholding. We want the court to tell us what the respective rights are of the parties so that we can proceed with this contract because he's threatening to hold us in breach. And I heard Ms. Stein talk about, well, what was our alternative here? There were several alternatives. One of which is, you know, if you look at the facts and the elements of some of these claims, particularly breach of contract and quiet title, they hadn't performed yet. And, you know, they kind of jumped the gun and say, well, you know, you've breached this contract and we're entitled to quiet title to the contract, even though we haven't performed it yet. And I think they really did jump the gun. What they did was said, hey, we need to do this withholding, but they never said we're going to take that money and we're going to pay it to the IRS, which they could do. You know, when I pay my employees, I don't keep that money in my pocket. Okay. Well, let me stop you right there. If they satisfied your tax obligations and you should treat that as a payment to you, what's your client's response? My client's response would have been you're in breach, but I'll tell you what would have happened. Well, therefore there's not much of a remedy. You just said that was a good idea for them. I think it was a terrible idea. Well, actually, you know, this cuts both ways because Ms. Stein, well, her clients, the Gilberts, their case was dismissed for lack of jurisdiction because the courts, both the state and the district court said, this is a tax question that we can't answer. Well, we filed an action too. And the court told us the same thing. They said, well, we're not going to be able to determine this because we said, well, you're in breach. You didn't pay. We need to get you out of the house. They told us the same thing they told Ms. Stein. You don't have jurisdiction. We're not going to answer this tax question. So I've got a problem on the jurisdictional question for the, uh, for, uh, interpreter. The district judge says there's insufficient diversity. Well, I think the district judge misunderstands diversity in interpreter cases. District judge says there's no complete diversity. You do not need complete diversity for diversity jurisdiction interpreter. And further, I think there's at least a plausible enough federal question here that there is jurisdiction. I have no difficulty about the subject matter jurisdiction issue. The issue that I might have as to whether interpreter is is to whether or not once the money is deposited in the court and interpreter, the district court has to come up with a, some certain that goes to each side. I think that the signs would be perfectly content if the district court were simply to say that they either do or do not owe the money that rather than calculating the amount, all they're interested in is who do I pay? So why is that not appropriate in interpreter? Well, your honor, I think I disagree because it depends on which pathway you're talking about, uh, the federal question jurisdiction, uh, whether you're saying it under 1331 or 1340. Uh, but I think either way, as you go down that path, you're going to run into a roadblock as I mentioned previously. Uh, so I think a federal question, you probably were referring to 1331. So I'll start there. Um, you know, they come into the court and they say, uh, the federal question, uh, that, uh, that we want to have answered is, uh, our obligations under FERPDA and FDAP. Well, that is, uh, first of all, it's not going to waive the court's immunity. Uh, and second of all, what they're doing is, um, they are, wait a minute, wait, the court's whose immunity are we talking about? The federal government. Yeah. Okay. Yeah. Because for the interpreter, right. Um, and second of all, under 1331, uh, there's still going to be an analysis, um, with regard to 1346, because what they're saying is, Hey, hold on, hold on, hold on. Um, before this money gets collected before there is a determination on, um, liability and assessment and, and collection of this tax, uh, we want to have a declaratory relief. We want to have a judicial opinion about whether or not we have this obligation and whether or not it excuses our performance under this contract. So I think even under 1331, they're going to run into a couple of different barriers as they proceed, because I see your point. There is a federal question when you say, how does this federal act, uh, impact my rights under this contract, but it doesn't take too long for, uh, down the analysis before you run into some other roadblock. And in this case, it would be 1346 and then also, uh, 26, 74, 21, uh, which would be a prohibition against suits, which restrain assessment or collection. So, well, I think, I think we're then back to the position that Ms. Steinman put forward. And they say they have no, they have no remedy because every, every, every suggestion they've made, you say doesn't work. Is that right? I think that's what I think. I think that's what happens. Isn't that your position? Well, we all have the benefit of hindsight now. And I can see that the suggestion that I brought up right at the beginning of my, uh, presentation actually would have worked. Had they been paying this money into the IRS, well, just the withholding amount and paying the rest to my client, he would have been mad. He would have said you're in breach, but we would have had no recourse. We wouldn't have been able to go and, uh, have a court adjudicate because we would have run into the same problem they're running into, which is, hey, we want a predetermination on this tax question. What do you say? I mean, you heard Ms. Stein say they couldn't do that because you wouldn't give them, uh, your client wouldn't give them, uh, the tax ID number. What's your response to that? Well, my client did, uh, provide what we believe to be sufficient tax information that they could have, uh, identified the entity and paid the money into the IRS. And then the obligation would have been on, uh, Namaka and, uh, Mr. Leopard as trustee to go seek that money and claim a refund. Uh, but, you know, we all run into this issue where these taxes need to be paid before as a prerequisite to appropriate. Why didn't the party's contract deal with this tax problem? Um, you know, I'm not sure, uh, that it was why it was not addressed, uh, in the, in the contract. Um, my guess would be that my client didn't think that it applied. Um, and that was part of his position when it came to the Gilbert saying, Hey, we don't, we're not going to pay the full amount due because we think there's a withholding. He disagreed. He said, no, this isn't an issue. Uh, you know, that tax does not apply in this situation. So there was a disagreement and, you know, my client had a tax attorney that was assisting him at that time. Um, and so he had an informed belief, but, you know, I, I'm not prepared to argue what that, uh, what that belief was or what the disagreement was between the parties as to the applicability. Okay. Uh, I'm not, I'm not sure you can help me anymore. I still don't quite understand this case. Maybe the government can tell me everything I need to know. Ms. Wang. If there's no further questions, Your Honor. No, it's just an expression of deep puzzlement. Thank you. Good afternoon, Cheryl Wang for the government and main place, the court. On page five of their reply brief, the Gilbert's concede that they no longer have a quiet title claim against the government. And, um, it is actually undisputed that the liens have been released. Um, and also I think the sign just said in her presentation that Turn down the volume on your microphone. It's so loud that it's kind of coming through blurry. Let's see if it's better. I'm sorry. A little softer, a little softer. Try that. Okay. That's better. Great. Thank you. I'm sorry about that. Now let me ask the others if that's better or worse for the others. Fine. All right. Thank you. So on page five of their reply brief, the Gilbert's concede that they no longer have a quiet title claim against the government. And we have released the liens that were pleaded in the first amendment complaint. Those releases were recorded. And that's actually how I personally found out about the releases. Um, and until today, um, my understanding from the brief little parties was that it was undisputed that the liens were released. Um, so we have given the Gilbert's that the, um, the relief that they wanted and, um, as against the government, the claim is moot. Um, as far as, uh, whether there will be additional liens in the future, that is purely speculative and should not defeat mootness. Um, the Gilbert's have not asserted, uh, specifically any further liens or old taxes by Mr. Labrador on the mock-up. And so we think that it would be appropriate to dismiss the appeal as to the government. Um, moving on to the interpleader claim. Um, so because it is our view that the appeal with respect to the quiet title claim is moot, the interpleader only relates to the alleged withholding obligations and the district court correctly dismissed for a lack of jurisdiction. And, uh, the clearest, the easiest way out of this problem is to go back to the statute, which is 28 USC 2410, requiring the government to have a mortgage or other lien on the property for a waiver of sovereign immunity. And first amendment complaint did not assert that the government ever had a obligations. Therefore the text of the statute does not apply and the government should not be part of the case. Um, as for the argument that the withholding obligations are different from a tax obligation, um, that is the distinction without a difference, frankly, um, withholding of taxes, it is taxes. And if they, um, district court were to look into it and do fact finding the same questions would have to be asked, namely whether the taxes have to be withheld and how much, um, and can I just ask you what, uh, so what should a, somebody in the Gilbert's position do? And so you're, you're buying property from somebody. You, you, you think they might be an entity that's of a nature that you would have a withholding obligation, but you're not sure. Um, you just have to hope that you guessed right. And if you don't withhold and you're wrong, you'll have some liability to the IRS. If you do withhold and you're wrong, you'll be liable in a breach of contract action. And maybe there'll be some losses with that. What do you do? Well, first of all, before they entered into a contract, it is also a good idea to do due diligence if possible. But once they've entered into the contract, um, the statute towards system actually protects them from both sides. Um, they, on one hand, okay, can deposit with us. And this time mentioned the 10 problem. And I spoke with my colleagues at the IRS before this argument as to how that will work. They don't need the market's 10 to get credit for meeting their obligations. They need their own 10, which they know they're on social security and they are with us. Um, the problem of the 10 only arises when the marker wants a refund because the IRS wouldn't know where to route it to. And when, if the marker disagrees about the withholding and want to refund with us, then they run into a problem. Um, as far as if the marker wanting to sue them for breach of contract, the statute also, um, protect them from that in sections 1461 and 1474 of the tax code, uh, the identification provisions, um, that acts as a nature of a defense against, uh, claims the market might have against them. Um, so they are protected on both ends. Um, so, um, with that, again, we think that the district court came to the right result, unless the panel has further questions. Okay. Thank, thank you very much. Ms. Stein, would you like about two minutes? That would be wonderful. Thank you, your honor. Okay. Um, at the end of the day, your honors, my clients want to know who they're supposed to pay. Are they supposed to? We just, we just heard that the liens are gone. That's what the feds just told us. This isn't with respect to the liens, your honor. This is with respect to the, with federal withholding obligations. Well, but if the liens are gone, there's no withholding obligation. No, your honor, that that's not true. Um, the withholding is triggered for every payment that the Gilbert's make to NMACA under this contract. They make, um, periodic payments. And so the withholding obligation is triggered under the FDAP for every periodic interest payment. It's also triggered at the end of the day under FERPTA. So we're talking about withholding for some other purpose. What kind of withholding are we now talking about? This is the tax. This is, this is the tax withholding for any payment that they make to a foreign entity in connection with the purchase of a U S property. Oh, I see. I'm So the release of the liens doesn't negate this entire case. We dispute that the liens are released because we can't determine that absent additional fact finding, which isn't appropriate to this court. We don't believe that even if you were to consider it, that it moots the case and the liens are separate and independent from the federal withholding obligations still exists. And so on those withholding obligations, what we want to know is who's our client supposed to pay. And if our client can't go to tax court because there's limited jurisdiction and we can't go this issue resolved between the taxpayer NMACA and us in front of the administrative process with the IRS, where's our client supposed to go? I can't do what the government's council just suggested and deposit the money with the government and go through that process. Again, even if we could deposit the money, you still have the issue with the TIN. And I know we're getting into things that are outside of the record to some extent, your honor, but NMACA's position has been if you withhold any amounts, you are forfeiting your interest in the property and you've breached your agreement. So I mean, I get, I get the problem that you have with the, with the seller. I'm not quite sure what to do with that. It seems that perhaps we have a badly drafted contract here, but I'm not sure that a badly drafted contract is a reason to change how tax process and law works. So my question is if, if that deposit mechanism is available under federal tax law, what authority do you have to say that that because at the end of the day, as Ms. Wong had indicated, NMACA can't go without a TIN number, find that money, and then, but that's not your client's problem. That's their problem. No, your, no, your honor. And I, and I appreciate that, but at the end of the day, my client shouldn't have to choose between liability under a contract and liability to the federal government. There must be some forum where they could bring their dispute. And I appreciate that there have been these developments with the liens, which we need to determine factually there's issues with respect to jurisdiction that have been raised all around. But at the end of the day, when you look at what the trial court ruled, he ruled on jurisdictional grounds that were never raised by the parties. The parties, the Gilberts didn't have the ability to plead alternative bases for liability. And, and specifically on the breach of contract claim, the deck action claim, the wrongful recording claim, there may be diversity jurisdiction, your honors. You know, there's, there's a number of different bases for jurisdiction that I think we could plead had we been given the opportunity to do so. And perhaps your honor, maybe may I ask you just one, one question about the breach of contract action. Since you just mentioned that, um, he, I know you question whether, whether we can reach this, but if in fact the liens have been released, do you still have a breach of contract action or are you seeking and what, what relief would you be seeking? Um, if the liens have been released and there's now the ability to convey clear title. We do, your honor, we do still have a claim and the Wells Steward case and the bells case that were cited in our papers are instructive on this particular point. Um, in those instances, the court held that even when circumstances changed after the filing of a complaint. So for example, um, a debt was owed, but it was paid later on, um, the party, the pile, the complaint still has a claim because they had to incur attorney fees, costs, expenses, et cetera, in order to compel that result. And so irrespective of whether the liens are or are not there, there still is a viable basis for the breach of contract claim. At the very least with respect to the attorney's fees and costs that my client has incurred and potentially other bases. But we were divested of that opportunity to go and plead any additional grounds that the court, um, that might, that might, uh, uh, that the court, that the trial court might have found persuasive. Um, and that's what we'd like to do, your honor. We'd like the additional fact finding with respect to the status of the releases. I think we should do that. We'd also like the opportunity to amend the complaint to address some of the perceived deficiencies of trial court had in that breach of contract and the quiet title claim, um, as well as assert alternative bases for jurisdiction over claims, particularly with respect to NMACA. Let me ask you this. Um, I know that you're uncertain as to whether or not you need to withhold statutes. Is the amount of withholding in question or is it only whether you must withhold withhold in question? It's only whether we must withhold the amount as a statutorily prescribed amount, um, in FDAP. So the, so the, so the amount is not, if this were to go to interpleader, the district court has no job to do with respect to determining how much is supposed to be withheld. It's only just has to decide whether the withholding has to be done. Correct. That's right. I know this is a little bit out of the ordinary. Let me ask both Ms. Wong and Mr. Rods if they know the answer, if they, if they agree with that, it is, is, is the amount in dispute or is it only the fact in dispute as to whether or not it should be withheld, either or both of you? Well, I think it would depend on what the issues that, um, the Gilberts would decide to raise with respect to that. And we don't know that at this moment. Uh, again, I don't think it's appropriate given the language of the statute. So, but I understand you have a medical. Okay. I think you said you're not sure. Okay. Mr. Rods, do you know the answer to that? I too am unsure. Uh, I think that the, the Ms. Stein is correct that it is a statutory percentage. Um, but I don't think that the, the court would get out of it without having to make some sort of determination about assessment, uh, and collection, which was the real sticking point for the district court. Okay. Okay. Thank, thank you. I'm sorry. Sorry to do that. A little dipsy. Okay. Thank, thank you. Anything else in rebuttal? We're, we're well over time. I appreciate it. And I don't want to take up more of the court's time. If the court has any additional questions of me, I'm happy to consider them. Otherwise, um, I'll stand. Okay. I thank all of you for your helpful arguments. I guess I'll call them helpful arguments, even though I remain somewhat puzzled. Uh, and thank you. Thank you for all of your arguments. Gilbert versus United States et al. Submitted. Thank you very much.
judges: W. Fletcher, Miller, Hunsaker